## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### *Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **JAKE'S FIREWORKS INC.,** | | |
| | * | |
| **Plaintiff,** | | |
| | * | |
| **v.** | | |
| | * | **Case No.: PWG 19-cv-1161** |
| **UNITED STATES CONSUMER** | | |
| **PRODUCT SAFETY COMMISSION,** *et al.*, | * | |
| | | |
| **Defendants.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MEMORANDUM AND ORDER

Jake's Fireworks Inc. ("Jake's Fireworks") seeks injunctive and declaratory relief against

the United States Consumer Product Safety Commission (the "Commission" or "CPSC") and Ann

Marie Beurkle, in her official capacity as Acting Chairman of the Commission.[1]  Am. Compl. ¶ 1,

ECF No. 16.  The Commission is a regulatory agency charged with enforcing the Consumer

Product Safety Act ("CPSA"), 15 U.S.C. §§ 2051 *et seq.*, and the Federal Hazardous Substances

Act ("FHSA"), 15 U.S.C. §§ 1261 *et seq. Id.* at ¶ 6.  Jake's Fireworks, a nation-wide retailer of

consumer fireworks, alleges that it received enforcement letters from the Commission requiring

the impound of some of its merchandise for failure to satisfy certain regulations.  *Id.* at ¶ 4. In its

four-count complaint, Jake's Fireworks seeks this Court's declaration that the statutory and

regulatory provisions enforced by the Commission that are at issue do not apply to their particular

---

[1]     Defendants report that on October 1, 2019, Ann Marie Buerkle was replaced by Robert S. Adler as Acting Chairman of the United States Consumer Product Safety Commission.  Reply n.1, ECF No. 23; *see also* https://cpsc.gov/About-CPSC (last visited Oct. 20, 2020).

consumer fireworks or, alternately, that the Commission's enforcement of the statutes and regulations is arbitrary and capricious.  *Id.*

Defendants filed the pending motion to dismiss all claims brought against them in the Amended Complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  Mot. ECF No. 17.  In the alternative, Defendants seek to dismiss the fourth cause of action—a Fifth Amendment void-for-vagueness challenge—for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and argue that Jake's Fireworks' requests for injunctive relief are moot. *Id.*; Mot. Mem. 3, ECF No. 17-1.  Because I conclude that this Court does not have subject-matter jurisdiction, Defendants' Motion to Dismiss, ECF No. 17, is GRANTED,[2] and the Amended Complaint is DISMISSED WITHOUT PREJUDICE.

## BACKGROUND

### I.    Regulatory Overview

The Consumer Product Safety Act ("CPSA") was enacted, in part, "to protect the public against unreasonable risks of injury associated with consumer products."  15 U.S.C. § 2051 (b). The CPSA created the Consumer Product Safety Commission and authorized it, among other things, to conduct research on and test consumer products, to promulgate consumer product safety standards, and to ban hazardous products. 15 U.S.C. §§ 2053, 2054, 2056, 2057.  The Commission also inherited from the Food and Drug Administration responsibility for enforcing the Federal Hazardous Substances Act ("FHSA"), 15 U.S.C. §§ 1261 *et seq. See* 15 U.S.C. § 2079.  The FHSA prohibits "the introduction or delivery for introduction into interstate commerce" of "hazardous

---

[2]    Because I find that this court lacks subject-matter jurisdiction, I need not reach the other grounds raised by the Defendants in their motion to dismiss.

substance(s)," 15 U.S.C. § 1263, and provides for penalties, 15 U.S.C. § 1264, and seizures of

misbranded or banned products, 15 U.S.C. § 1265.[3]

The Commission works with importers and the United States Custom and Border

Protection ("CBP") to sample imported fireworks devices and examine them for possible

violations of the FHSA.  15 U.S.C. § 1273(a).  The Commission's multi-step process for sampling,

notifying the importer, and enforcing its statutes and implementing regulations is described in

detail in The Regulated Products Handbook (the "Handbook"), which was developed to help

importers understand their responsibilities and procedural options when informed of a violation.

Mot. Ex. 4, ECF No. 17-6.[4]  The Handbook provides this summary in the Preface:

> When CPSC staff determines that a product violates a specific
> statute or regulation, CPSC Office of Compliance and Field
> Operations generally notifies the responsible firm (the product
> manufacturer, importer, distributor, or retailer) of the violation and
> requests a specific remediation of the problem.
>
> Notification to the responsible firm is usually in the form of
> an official letter, referred to in this Handbook as the Letter of Advice
> or a Notice of Noncompliance from the Office of Compliance and
> Field Operations (collectively referred to in this Handbook as LOA).
> Firms should review this Handbook in conjunction with the LOA
> sent by CPSC staff that identifies the applicable statutes and
> regulations violated. The LOA informs the firm of the specific
> product and violation that has occurred; requests that the firm take
> specific corrective actions (including stopping the sale and
> distribution of the product; recalling the product from distributors,
> retailers, and/or consumers; quarantining and disposing of inventory
> of the product; and changing future production of the product); and
> informs the firm of the legal actions available to the Commission
> (including civil and criminal penalties and injunctive relief). In

---

[3]     Consumer fireworks are regulated under the FHSA, and Jake's Fireworks challenges the applicability to its reloadable aerial shells of two fireworks regulations, specifically, 16 C.F.R. § 1500.17(a)(3), and 16 C.F.R. § 1500.14(b)(7).  *See* Am. Compl. ¶¶ 16-41.  Jake's Fireworks also asserts that the "poof/bang" test that the Commission uses to test fireworks has not been promulgated through notice and comment rulemaking, or otherwise been publicized; thus the test is unreasonable, arbitrary, and capricious.  *Id.* at ¶¶ 42-56.

[4]     The Handbook, specifically Chapter 3, is referenced in the Amended Complaint, Exhibit B, Exhibit D, and Exhibit H.

addition, the LOA informs the firm that if it disagrees with CPSC staff's determination that a violation has occurred or believes the product is not subject to the Commission's jurisdiction, it may question staff's findings and present evidence to support its position. *See* Chapter 3 of this *Handbook*.

Handbook 5-6.  Chapter 3 contains the procedures to be followed:

RESPONDING TO THE CPSC LETTER OF ADVICE (LOA)

When the CPSC staff notifies you in a LOA that a product that you manufacture, import, distribute, sell, or offer for sale fails to comply with a CPSC statute, rule, regulation, standard, or ban, you may present evidence supporting your view if you disagree with staff's determination.

The LOA will state that the firm may present evidence that a violation does not exist or that a product is not covered by the applicable statute or regulation. The letter will indicate to whom the response should be addressed and will give you a timeframe for the expected response. You may submit, to the indicated recipient, all evidence and arguments that support why you believe the product is not violative; not subject to a specific statute, rule, regulation, standard, or ban; or, should not be refused admission in the United States (if the violation involves an import detained at the port) or seized by CBP.

A firm may respond to a notice of noncompliance orally or in writing, and the firm may request an informal hearing to meet personally with Office of Compliance or Import Surveillance Division staff to present orally views and evidence.  Such evidence may consist of:

• results from testing that supports certificates of compliance;
• results of tests indicating the product complies with the applicable regulation;
• marketing data indicating the product is not intended for the population group protected by the regulation or standard; or
• any other relevant data to support the claim of compliance.

CPSC RESPONSE TO FIRM RESPONSE

Any additional evidence or arguments that a firm presents are reviewed by the appropriate CPSC Office of Compliance or Import Surveillance Division staff, including appropriate technical and legal staff.  If the information you present, in the staff's opinion,

does not refute staff's claim that the product is violative or covered by a specific statute, rule, regulation, standard, or ban, Commission staff, as a general rule, will notify you in writing before staff pursues any enforcement action against the products or your firm.

If a firm continues to disagree with CPSC staff and declines to take corrective action, the staff may request the Commission approve appropriate legal proceedings, including the issuance of an administrative complaint, injunctive action, seizure action, or such other action as may be appropriate.

*Id.* at 18-19.

To enforce its statutes and regulations, the Commission prefers to work cooperatively with industry "but initiat[es] litigation when necessary." *Id.* at 7. It may impose sanctions for violations, including both civil and criminal penalties. *Id.* at 8. "In addition, firms and individuals may be enjoined from continuing to violate CPSC statutes and regulations, and pursuant to court order, violative products may be seized to prevent distribution in commerce." *Id.*; *see also id.* at 14 (quoting 15 U.S.C. § 1267 to state that United States district courts have jurisdiction to restrain violations of the FHSA). As referenced above, Chapter 3 provides detailed procedures to follow if a firm disagrees with the Commission's staff's determination that a product is in violation of a statute or regulation, including how a firm may respond to a Letter of Advice ("LOA") or notice of noncompliance and the steps that follow such a response. *Id.* at 18. Ultimately, "[i]f a firm continues to disagree with CPSC staff and declines to take corrective action, the staff may request the Commission approve appropriate legal proceedings, including the issuance of an administrative complaint, injunctive action, seizure action, or such other action as may be appropriate." *Id.* at 19.[5] Chapter 4 provides the details for handling of regulated products at ports of entry. *Id.*

---

[5]     Before a civil or criminal penalty is sought, the regulated entity must be notified and provided an opportunity to present views or submit evidence and arguments. 15 U.S.C. § 1266; 16 C.F.R. § 1119.5.

## II.     Factual and Procedural Background

Jake's Fireworks is one of the nation's largest importers and distributors of consumer fireworks with distribution centers from coast to coast.  Am. Compl. ¶¶ 5, 57.  One of its best sellers is the Excalibur product line of small reloadable aerial shells,[6] which it purchases and imports from a Chinese manufacturer.  *Id.* at ¶ 57.  When Jake's Fireworks imports these shells, it must certify that the fireworks comply "with all rules, bans, standards, or regulations applicable." *Id.* at ¶ 59 (quoting CPSA, 15 U.S.C. § 2063(a)(1)(A)).  Since about 2010, Jake's Fireworks has used American Fireworks Standards Laboratory, an independent non-profit third-party testing laboratory, to test its fireworks for compliance with the Commission's regulations. *Id.* at ¶ 60.  The Commission inspects and samples products, including the fireworks at issue, at United States ports of entry to ensure compliance with the safety statutes and regulations, and products are not allowed to be distributed in commerce until the Commission has determined the product's admissibility. *Id.* at ¶ 62.

When the Commission's testing reveals a violation of an applicable requirement—such as improper audible effects or improper labeling—it follows the process described in the Handbook for advising the importer.  *Id.* at ¶ 63.  Ultimately, the Commission either authorizes release of the product or requests that the shipment be destroyed, subject to civil and criminal penalties if the products are sold without having been released.  *Id.*  Jake's Fireworks alleges that the Commission increased its sampling of Jake's Fireworks' imports of its reloadable aerial shells beginning in the

---

Additionally, the Commission must approve any settlement by the Office of General Counsel ("OGC") of a civil penalty or OGC recommendation to refer to the United States Department of Justice an action seeking to assess a civil penalty. 15 U.S.C. § 2069(b), (c).

[6]      Also referred to as reloadable tube aerial devices.  Am. Compl. ¶ 57, n.1.  According to Jake's website, these explosive devices are "known for great color" and "thunderous breaks."  Mot. Mem. 2 (quoting Jake's Fireworks, https://www.jakesfireworks.com/fireworks/artillery-shells (last visited September 24, 2019)).

spring of 2014, and between March 19, 2014 through July 20, 2018, the Commission detained, at

least temporarily, an approximate market value of over $3.7 million worth of its reloadable aerial

shells.  *Id.* at ¶ 64.[7]  Jake's Fireworks alleges that the Commission continues to sample and detain

these products at an increasing rate. *Id.* at ¶ 64.

Jake's Fireworks received Notices of Non-Compliance (which the Commission also refers

to as "Letters of Advice," Handbook at 5) from the Commission requesting that it stop the sale of

certain products and destroy them, advising that violations were subject to civil and criminal

penalties.  *Id.* at ¶¶ 65-68 (attaching Exhibits B-D as examples).[8]  Jake's Fireworks responded to

the notices and requested that the Commission rescind them and release the fireworks without

condition.  *Id.* at ¶ 70-71 (attaching Exhibit E as an example response).[9]  On October 3, 2014, the

Commission reiterated its position that the reloadable aerial shell fireworks violated applicable

statutory and regulatory requirements and requested that they be destroyed.  *Id.* at ¶ 72 (attaching

the letter as Exhibit F).[10]  Jake's Fireworks responded by letter, again asking that the Commission

rescind the notices.  *Id.* at ¶¶ 72-73 (attaching the letter as Exhibit G).[11]  At some point, Jake's

Fireworks inquired whether the Commission's October 3, 2014 letter constituted final agency

---

[7]     The Commission states that all products at issue were released from import holds, and Jake's
Fireworks agrees that the products have been released from import holds.  *See* Pl.'s Resp. 2, 21 n.13.
[8]     Exhibit B is Notice of Non-Compliance dated September 18, 2018, sent by email to Jake's
Fireworks from a Commission Compliance Officer, and included a laboratory report.  ECF No. 16-2.
Exhibit C is an example of a laboratory report, which was also part of Exhibit B.  ECF No. 16-3.  Exhibit
D is a Notice of Non-Compliance dated August 19, 2014, sent by certified mail to Jake's Fireworks from a
Commission Compliance Office, and included a laboratory report.  ECF No. 16-4.
[9]     Exhibit E is a letter dated May 26, 2016, sent by email from counsel, Miles & Stockbridge, retained
by Jake's Fireworks for the purpose of responding to three specific notices.  ECF No. 16-5.
[10]     Exhibit F is a letter dated October 3, 2014, sent by email and certified mail to Jake's Fireworks and
its counsel, Miles & Stockbridge, from a Commission Compliance Officer.  ECF No. 16-6.  It notes that
Jake's Fireworks provided no evidence to dispute the violations, but instead questioned the validity of the
regulations, so the Commission staff stands by its determination of the violations.  *Id.*
[11]     Exhibit G is a letter dated October 14, 2014, sent by email to a Commission Compliance Officer
from Jake's Fireworks' counsel, Miles & Stockbridge.  ECF No. 16-7.

action. *Id.* at ¶ 73.[12]  On December 8, 2014, the Commission's staff orally indicated that it would

re-test samples, and Jake's Fireworks believes that the re-testing occurred before February 13,

2015.  *Id.* at ¶ 73.  On May 20, 2015, the Commission issued another Notice of Non-Compliance,

including the reports of its re-tests with a determination that two shipments, upon re-testing,

complied with regulations, but that other shipments violated regulations.  *Id.* at ¶¶ 74-75 (attaching

the notice as Exhibit H).[13]  The Commission reiterated its request that sales stop and the violative

products be destroyed. *Id.*  The Commission continues to sample Jake's Fireworks' imports for

compliance with regulations, some of which comply while others do not.  *Id.* at ¶ 64; Mot. Mem.

11 (attaching examples).  The Commission states that it has not initiated any enforcement action

against Jake's Fireworks or its products for violations of the FHSA (and, indeed, that it could not

do so without further approval from the Commission's Office of General Counsel, which, in turn,

must refer the matter to the Department of Justice for approval of enforcement action).  Mot. Mem.

11; Reply 8 n.4.

Jake's Fireworks alleges that the Commission is applying inapplicable regulations to their

reloadable aerial shells in an arbitrary, capricious manner that constitutes an abuse of discretion.

Am. Compl. at ¶¶ 76-80.  Specifically, Jake's Fireworks alleges four causes of action in its

Amended Complaint:

---

[12]     In Plaintiff's response to Defendant's motion, it included a letter, Exhibit 4, which indicates that counsel from Mayer Brown spoke with a Commission Compliance Officer on November 25, 2014.  ECF No. 22-4.  The letter reveals that counsel was informed that the staff letter of October 3, 2014 was not the final agency action. *Id.* The letter notes the costs of delay and contains a request for a final decision.  *Id.*
[13]     Exhibit H is a Notice of Non-Compliance dated May 20, 2015, sent by email and certified mail to counsel for Jake's Fireworks, Mayer Brown, from the Commission's Lead Compliance Officer, and included a laboratory report.  ECF No. 16-8.  It responds to correspondence of December 22, 2014 sent from Mayer Brown to the Commission staff, and it states that at Jake's Fireworks' request, staff agreed to conduct re-testing of certain products, which were found to be in compliance.  *Id.*  It indicates that CBP was asked to release those items from bond.  *Id.* Other samples continue to exhibit non-compliance.  *Id.* Jake's Fireworks asserts that this notice is a final agency action. Am. Compl. ¶¶ 10, 90, 94, 101; Pl.'s Resp. 2, ECF No. 22.

- First Cause of Action – Violation of the Administrative Procedure Act for Abuse of Discretion and Unlawful, Arbitrary and Capricious Agency Action (Application of 16 C.F.R. § 1500.17(a)(3));

- Second Cause of Action – Violation of the Administrative Procedure Act for Abuse of Discretion and Unlawful, Arbitrary and Capricious Agency Action (Application of Non-existent Reports Labeling Requirement);

- Third Cause of Action – Violation of the Administrative Procedure Act for Abuse of Discretion and Unlawful, Arbitrary and Capricious Agency Action (Use of "Poof/Bang" Test);

- Fourth Cause of Action – Unlawful Agency Action under the Administrative Procedure Act Based on the Commission's Violation of the Fifth Amendment to the United States Constitution.

Defendants assert that because the notices and letters transmitted to Jake's Fireworks do not constitute final agency action, the Court lacks subject matter jurisdiction to review them. Mot. Mem. 1-3. Defendants also argue that the fourth cause of action should be dismissed for failure to state a claim, and that the requests for injunctive relief are moot. *Id.*

## STANDARD OF REVIEW

"[W]hether an agency's action 'constituted final agency action under the APA so as to be reviewable in court' is 'a question of subject matter jurisdiction.'" *Am. Acad. of Pediatrics v. Food & Drug Admin.*, 379 F. Supp. 3d 461, 474 (D. Md. 2019) (quoting *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 458 (4th Cir. 2004)).[14] When subject matter jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(1), the plaintiff has the burden of proving that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991)).

---

[14]    "There is a split among Courts of Appeals concerning the standard of review for challenges to 'final agency action.'" *See New Mexico v. McAleenan*, 450 F. Supp. 3d 1130, 1190 (D.N.M. 2020) (citing cases). However, in this circuit, whether an agency action is final is a jurisdiction issue. *See City of New York v. U.S. Dep't of Defense*, 913 F.3d 423, 430 (4th Cir. 2019).

When a defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject

matter jurisdiction, asserting a facial challenge that "a complaint simply fails to allege facts upon

which subject matter jurisdiction can be based," as Defendants do here, "the facts alleged in the

complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural

protection as he would receive under a 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213,

1219 (4th Cir. 1982).

Pursuant to Rule 12(b)(6), a plaintiff's claims are subject to dismissal if they "fail[ ] to state

a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ.

P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79

(2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not

to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."

*Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting

*Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

Whether considering a Rule 12(b)(1) challenge or a Rule 12(b)(6) motion, the Court may

take judicial notice of "fact[s] that [are] not subject to reasonable dispute" because they "can be

accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Fed. R. Evid. 201(b)(2). Additionally, the Court may "consider documents that are explicitly

incorporated into the complaint by reference." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159,

166 (4th Cir. 2016); *see also Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL

1308582, at *2 (D. Md. Mar. 28, 2013) ("The court may consider documents attached to the

complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed."); *CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").   Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at \*2-3 (D. Md. Apr. 12, 2011).

Here, the Plaintiff attached letters and notices to its Amended Complaint, and Defendants' Motion also included attachments of letters and notices as well as the referenced Handbook.  There are no challenges to the authenticity of these documents, and I may consider them when deciding the dismissal motion.

## DISCUSSION

"Judicial review under the APA . . . is limited to 'final agency actions.'" *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 430 (4th Cir. 2019) (quoting 5 U.S.C. § 704). Generally, "two conditions must be satisfied for agency action to be 'final.'" *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 194–95 (4th Cir. 2013) (quoting *Bennett v. Spear,* 520 U.S. 154 (1997)). The first requirement is that "the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *Id.* (quoting *Bennett*, 520 U.S. at 177–78 (citation and quotation marks omitted)). The second is that "the action must be one by which rights or obligations have been determined *or* from which legal consequences will flow." *Id.* (quoting *Bennett*, 520 U.S. at 178 (citation and quotation marks

omitted) (emphasis added)).[15] Stated differently, "[t]he core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts,* 505 U.S. 788, 797 (1992). "[T]he measure of finality is also 'pragmatic'; an agency action is 'immediately reviewable' when it gives notice of how a certain statute will be applied even if no action has yet been brought." *Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233, 285 (4th Cir.), *as amended* (Feb. 28, 2018) (Gregory, C.J., concurring) (quoting *U.S. Army Corps of Eng'rs v. Hawkes Co.*, ⸺ U.S. ⸺, 136 S. Ct. 1807, 1815 (2016)), *cert. granted, judgment vacated on other grounds*, ⸺ U.S. ⸺, 138 S. Ct. 2710 (2018).

Jake's Fireworks alleges that the May 20, 2015 Notice of Non-Compliance[16] ("the Notice") constitutes final agency action. Am. Compl. ¶¶ 10, 90, 94, 101; Pl.'s Resp. 2. "'The term "action" as used in the APA is a term of art that does not include all conduct' on the part of the government." *City of New York*, 913 F.3d at 430-31 (quoting *Vill. of Bald Head Island*, 714 F.3d at 193)). The alleged "action" at issue here is an "order" or "sanction." Pl.'s Resp. 6; *see* 5 U.S.C. § 551 (6), (10), (13) (defining agency action, order, and sanction). I shall review the Notice to determine if it satisfies both prongs of the *Bennett* test such that the action can be considered final. *See Golden*

---

[15] Whether an agency action creates legal consequences does not necessarily address finality concerns, and some courts have instead considered this factor as affecting the definition of "agency action" under 5 U.S.C. § 551(13) rather than the meaning of "final" agency action under § 704. *See City of New York*, 913 F.3d at 431; *Vill. of Bald Head Island*, 714 F.3d at 193.

[16] Am. Compl. Ex. H, ECF No. 16-8; *see also* ECF No. 17-3. In its response to the Commission's motion, Jake's Fireworks adds that the March 7, 2016 Notice of Non-Compliance, which was attached to the Commission's Motion as Exhibit 9, ECF No. 17-11, is also a final agency action. Pl.'s Resp. 2 n. 1. Defendants argue that "the complaint may not be amended by the briefs in opposition to a motion to dismiss." Reply 2 (quoting *McDonald v. LG Electronics USA, Inc.*, 219 F. Supp. 3d 533, 541 (D. Md. 2016)). However, Jake's Fireworks' contentions were only that the 2016 notice appears to be similar to the 2015 Notice, both of which differ from the prior notices and demonstrate finality. *See* Pl.'s Resp. 2 n.1, 3 n.2, 5, 8, 9-10, 11, 15, 20-21. I accept it for this limited purpose, rather than as an attempt to amend the complaint and reference to the Notice herein includes acknowledgment that the 2016 notice is similar.

*and Zimmerman, LLC v. Domenech*, 599 F.3d 426, 432 (4th Cir. 2010) (indicating that both *Bennett* requirements must be satisfied); *COMSAT Corp. v. National Sci. Found.*, 190 F.3d 269, 274 (4th Cir. 1999) ("[A]n agency action may be considered 'final' only when the action signals the consummation of an agency's decisionmaking process *and* gives rise to legal rights or consequences.") (italics in original).

## I.      Consummation of Process

Under the first *Bennett* prong, I must evaluate whether the Notice represents the culmination of the Commission's decision-making process rather than a "tentative" or intermediate step. *See Franklin*, 505 U.S. at 797.  It also cannot be the ruling of a subordinate official that needs approval from the agency's head before it becomes final. *Abbott Labs. v. Gardner*, 387 U.S. 136, 151 (1967); *see also Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) ("The decisionmaking processes set out in an agency's governing statutes and regulations are key to determining whether an action is properly attributable to the agency itself and represents the culmination of that agency's consideration of an issue.").  And there must be no indication that the decision will be revised in the future, that there is an appeal or further review pending, or that there is any entitlement to further action. *See Sackett v. EPA*, 566 U.S. 120, 127 (2012) ("The mere possibility that an agency might reconsider in light of 'informal discussion' and invited contentions of inaccuracy does not suffice to make an otherwise final agency action nonfinal.").

Here, the decision-making process is outlined in the Handbook.  The Handbook describes a back-and-forth communication process, which both parties agree occurred here. After multiple communications, the Notice was sent from the "Lead Compliance Officer" of the Regulatory Enforcement Division responding to earlier correspondence and details retesting results of multiple devices.  The retesting and review resulted in multiple findings, including that some devices were

found to be in compliance and released from bond, some devices were found to be in violation of a different requirement, which allowed for them to be reconditioned or relabeled, and some were found to continue to exhibit non-compliance requiring corrective action. The Handbook, which was attached to the Notice, states that "[a] firm may respond to a notice of noncompliance orally or in writing, and the firm may request an informal hearing to meet personally with Office of Compliance of Import Surveillance Division staff to present orally views and evidence." Handbook at 18. However, Jake's Fireworks did not request a hearing and opportunity to present evidence. The Handbook also states that "[i]f a firm continues to disagree with CPSC staff and declines to take corrective action, the staff may request the Commission approve appropriate legal proceedings, including the issuance of an administrative complaint, injunctive action, seizure action, or such other action as may be appropriate." *Id.* at 19. Thus, the Lead Compliance Officer lacks the independent authority to initiate enforcement action that could expose Jake's Fireworks to civil or criminal penalties, without first obtaining the approval of the Commission's Office of General Counsel, which, in turn, must refer the matter to the Department of Justice, which then must decide whether to bring an enforcement action. Reply 4-5, 8 n.4. On this basis, the Notice appears to be an intermediate ruling of a subordinate official, and it does not, as contended, clearly reflect the culmination of a series of communications.

Jake's Fireworks contends that the determination of non-compliance was definitive, and the Notice, unlike examples provided of earlier notices, did not invite further discussion, did not include instructions for disputing the determination, and did not refer to the Handbook chapter about how to dispute a determination. Pl.'s Resp. 8-10. But Jake's Fireworks puts too sharp a point on this argument, as it disregards the fact that the Notice did include the Handbook as an attachment (which clearly explains how Jake's Fireworks could dispute a determination, including

the opportunity to request an informal hearing, which Jake's Fireworks chose not to pursue, *see* Pl.'s Resp. 4, 9-10), used language such as "reiterates its requests," and ended with "Please submit your response . . . within 10 days from the date you receive this letter outlining the specific corrective action that Jake's Fireworks plans to take to address the future sale of these products and any other products subject to the mandatory requirements."   This type of language can be distinguished from the definitive language used in the cases that Jake's Fireworks cited.  *See, e.g.*, *Doe v. Tenenbaum*, 127 F. Supp. 3d 426 (D. Md. 2012) (contesting the  Commission's planned publication of an agency report); *Scenic America, Inc. v. United States Dep't of Transp.*, 836 F.3d 42 (D.C. Cir. 2016) (challenging a guidance memorandum issued by the Federal Highway Administration); *City of Dania Beach, Fla. v. FAA*, 485 F.3d 1181 (D.C. Cir. 2007) (petitioning for review of a FAA letter changing runway use procedures at airport); *American Bar Ass'n v. United States Dep't of Educ.*, 370 F.Supp.3d 1 (D.D.C. 2019) (challenging loan forgiveness denial letters).

Jake's Fireworks also argues that the process culminating in the Notice is similar to the informal adjudication that took place in *Tenenbaum*, which was found to qualify as a final agency action. Pl.'s Resp. 10.  There, Judge Williams of this court rejected the Commission's arguments about the intermediate nature of its decision to publish a report, concluding instead that the decision was the consummation of a lengthy informal adjudication, and even if subsequent action remained a possibility, it was final for purposes of judicial review.  *Tenenbaum*, 127 F. Supp. 3d at 464–65. He found that the notice and procedural requirements obligated the Commission to make a legal determination and included an adversarial process with the provision of evidence "with a view to meeting the 'burden of proof.'"  *Id.* at 462–63 (quoting 16 C.F.R. § 1102.26(b)).  But here, the process, as outlined in the Handbook, does not require the issuance of a final "notice" at the end

of the back-and-forth communications, but rather, it states that at the end of the process, the staff

may request that the  Commission (and thereafter, the DOJ) approve appropriate legal proceedings

and, generally, will provide a written notification before that happens.   No enforcement

proceedings have been initiated, and the Notice does not indicate in any way that an enforcement

action will be pursued by the staff.

Jake's Fireworks' responds to the lack of an enforcement action by arguing that the threat

of enforcement hangs over its head like a Damoclean sword, and the Commission does not actually

need to bring an enforcement action to be "final."  Pl.'s Resp. 15 (citing *Hawkes*, 136 S. Ct. at

1815 and *Sackett*, 566 U.S. at 129).  And by its filing of supplemental authority, Jake's Fireworks

notes that a series of letters may constitute final action because "receipt of the letters significantly

increased its risk of a statutory civil penalty being levied. . . ." *Ipsen Biopharmaceuticals, Inc. v.

Azar*, 943 F.3d 953, 954 (D.C. Cir. 2019).   However, the "increased risk" argument made in *Ipsen*

supported a finding of finality under *Bennett's* second prong.  *Id.* at 955.  The parties had agreed

that the action was the consummation of the agency's decision-making process and only the second

prong was in dispute.  *Id.* at 955-56.  Likewise, the *Hawkes* and *Sackett* courts considered

enforcement risk after deciding that there had been a consummation of the decision-making

process and were evaluating whether there was any other adequate remedy under the Clean Water

Act.  *See Hawkes*, 136 S. Ct. at 1813-15; *Sackett*, 566 U.S. at 127-29. Notably, the *Sackett* court

concluded that the compliance order marked the consummation of the decision-making process

because the Sackett's had asked for—and been denied—a hearing.  566 U.S. at 127.

Jake's Fireworks argues that the Notice comes to a "definitive conclusion" like the finding

in *Scenic America*.  Pl.'s Resp. 8-9.  In *Scenic America*, the Federal Highway Administration issued

guidance criteria for the regulation of billboard lighting, withdrawing discretion from the states'

divisional offices.  836 F.3d at 46. The guidance included a statement that it "may provide further guidance in the future as a result of additional information." *Id.* at 56.  The *Scenic America* court interpreted the language as a "boilerplate" indication that the agency might issue further interpretations "at some point in the indeterminate future." *Id.*  The court primarily relied on *Bennett's* second prong, because the revised criteria for the agency's offices to use in approving or rejecting state regulations created legal consequences for regulated parties. *Id.*  There is no comparable language in the Notice or the Handbook, and the action at issue here is a sanction, not a rule-making action.  Rather than presenting a definitive conclusion, the Notice presents multiple conclusions with multiple options for response, and it invites a response.

In *Dania Beach*, the court rejected the FAA's assertion that the letter it sent was not an order that changed existing procedures without a proper review, but merely information about existing procedures.  485 F.3d at 1187-88.  The court reasoned that the letter provided a new interpretation of the airport runway restrictions related to the noise compatibility program, and nothing about it was open to further consideration.  *Id.*  Jake's Fireworks argues that the Notice is like the FAA letter, and, unlike previous letters, did not invite further discussion and did not offer information about possible avenues of further appeal or reconsideration.  Pl.'s Resp. 9.  But the Notice is subject to the procedures outlined in the Handbook, which was attached to the Notice, and unlike providing a new interpretation of a program, it was consistent with the prior example letters provided, each of which stated that products in violation of the standard may not be sold and must be destroyed. *Compare* Exs. B, D, F, *with* H.  Each letter also referred to an attached Affidavit of Destruction of Fireworks.  *See id.* Also, the language in each letter consistently uses the word "request" and provides a time for a response.  *See id.*  Unlike the FAA letter, the Notice does not contain "new marching orders."  *Dania Beach*, 485 F.3d at 1188.

Jake's Fireworks argues that "courts also look to the way in which the agency subsequently treats the challenged action."  Pl.'s Resp. 11 (quoting *American Bar Ass'n*, 370 F. Supp. 3d at 21). In *American Bar Ass'n*, law school graduates challenged the Department of Education's letters reversing determinations of loan forgiveness, alleging that the Department had changed its interpretation of its regulations, but the Department argued that the denial letters sent to the plaintiffs were not final agency actions. 370 F. Supp. 3d at 10, 19.  Under the first *Bennett* prong, the court determined that the definitive language in the letters demonstrated the Department's final determination that plaintiffs did not qualify for the loan forgiveness program.  *Id.* at 20.  The letter sent to one of the plaintiffs was "less-than-definitive," but none of the plaintiffs received any additional communications from the Department that suggested that the letters were not final determinations, and even after the lawsuit, the determinations remained unchanged.  *Id.*  The *American Bar Ass'n* court also considered "whether the *impact* of the [agency action] is sufficiently 'final' to warrant review," and found that the letters had an immediate and significant impact on the plaintiffs.  370 F. Supp. 3d at 22.  Jake's Fireworks has not alleged any significant impact from the Notice that differed from any of the other letters received that would indicate the Notice was any more final than the earlier letters.  All of the letters sent to Jake's Fireworks state the potential sanctions using the same language.  I also note that Jake's Fireworks is aware of how to inquire whether a letter is a final decision, it previously inquired whether a particular letter was a final agency action, and it received a response to the inquiry.  *See infra* n.12.  Jake's Fireworks has not alleged that it made that same inquiry of the Notice.

In *Holistic Candlers*, a case cited by the Commission, the court found that the FDA's warning letters "plainly" did not demonstrate the consummation of the agency's decision-making process because the agency's procedures manual describes the warning letters "as giving 'firms an

opportunity to take voluntary and prompt corrective action before it initiates an enforcement action.'" 664 F.3d at 944. Similarly, the Handbook describes the Commission's warning letters as notifications that inform the recipient of violations, requests corrective action, informs what legal actions may be taken (including "the maximum sanctions to which the firm and/or individual may be subject"), and informs the steps to take to question the findings. Handbook at 5-6, 11, 18-19. Importantly, the Handbook describes what steps to take upon being informed of a violation, which includes the ability to present evidence, requesting an informal hearing, conditional release, and a possible opportunity to bring the violative product into compliance. *Id.* at 18-22. It specifically states that "the firm may request an informal hearing to meeting personally with Office of Compliance or Import Surveillance Division staff to present orally views and evidence." *Id.* at 18. "If the information you present, in the staff's opinion, does not refute staff's claim that the product is violative . . . Commission staff, as a general rule, will notify you in writing before staff pursues any enforcement action against the products or your firm." *Id.* Jake's Fireworks has not alleged that it requested a hearing that was denied nor that it requested reconsideration and was denied.

In sum, based on my review of Jake's Fireworks' allegations as well as the letters and Handbook, I conclude that the Notice was not the consummation of the Commission's decision-making process. While the process may be nearing its end, there are still steps that Jake's Fireworks may take, such as request a hearing or reconsideration. Therefore, Jake's Fireworks has failed to satisfy the first prong of the *Bennett* test.

## II.    *Bennett's* Second Prong

For the Notice to be reviewable as a final agency action, it must satisfy both prongs of the *Bennett* test. *See Domenech*, 599 F.3d at 432; *COMSAT*, 190 F.3d at 274. Because I have

19

concluded that Jake's Fireworks has not met the burden of showing that the Notice satisfied the first prong of the *Bennett* test, I need not and do not conduct a full analysis of the second prong.

## CONCLUSION

Having concluded that Jake's Fireworks has not satisfied its burden to show that the Notice was a final agency action, this Court does not have subject-matter jurisdiction to proceed. Accordingly, the Commission's motion shall be GRANTED, and the Amended Complaint is DISMISSED WITHOUT PREJUDICE.

## ORDER

For the foregoing reasons, it is, this 30th day of October, 2020, hereby ORDERED that:

1. Defendants' Motion to Dismiss, ECF No. 17, is GRANTED.

2. Plaintiff's Amended Complaint, ECF No. 16, is DISMISSED WITHOUT PREJUDICE.

3. The Clerk of Court is directed to CLOSE this case.

    /S/

Paul W. Grimm
United States District Judge
